UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

Case No. _____

RONIN FACTORY, LLC,

     Plaintiff,

v.

IMPORT GLOBAL, LLC,
ABRAHAM HABOSHA, and
LINDSAY MILLER,

     Defendants.

_____/

## COMPLAINT

Plaintiff RONIN FACTORY, LLC, a Nevada limited liability company, complains against Defendant IMPORT GLOBAL, LLC, a Florida limited liability company, Defendant ABRAHAM HABOSHA, a Florida resident, and Defendant LINDSAY MILLER, a Florida resident (all Defendants collectively referred to as the "Defendants"), and alleges as follows:

### INTRODUCTION

1.    This is an action filed by RONIN FACTORY, LLC (hereinafter "RFL" or "RONIN FACTORY" or "Plaintiff"), a well-known Nevada product manufacturer and retailer, to recover damages arising from Defendants' unauthorized use of Plaintiff's intellectual property in an attempt to intentionally confuse consumers into thinking they are purchasing Plaintiff's products.

2.    Plaintiff suffers ongoing daily and sustained violations of its intellectual property rights at the hands of Defendants, who wrongfully use Plaintiff's intellectual property for the

1

twin purposes of duping and confusing the consuming public, and earning substantial profits. The natural and intended byproduct of Defendants' actions is the erosion and destruction of the goodwill associated with Plaintiff's intellectual property, as well as the destruction of the legitimate market sector in which it operates.

3.     The Defendants' actions are willful in nature, entitling the Plaintiff to enhanced damages. The Plaintiff seeks statutory damages, actual damages, an award of its attorney fees and costs of suit, as well as injunctive relief.

### JURISDICTION AND VENUE

4.     This is an action for trademark infringement, trade dress infringement, false advertising, and unfair competition under the United States Trademark Act, Title 15 U.S.C. §§ 1051, *et seq*. ("Lanham Act"), for trademark infringement under Florida common law, for violation of Florida's Deceptive and Unfair Trade Practices Act, Fla. Stat. 501.201, *et seq*., and for copyright infringement under the Copyright Act, 17 U.S.C. §§ 101, *et seq*.

5.     This Court has original jurisdiction over claims arising under the Lanham Act pursuant to 28 U.S.C. § 1338(a), 28 U.S.C. § 1331 and 15 U.S.C. § 1121, in that they arise under the laws of the United States. This Court has original jurisdiction over the claims arising under the Copyright Act pursuant to 28 U.S.C. § 1338(a). This Court has supplemental jurisdiction of the state law claims asserted herein pursuant to 28 U.S.C. § 1367(a),

6.     This Court has personal jurisdiction over Defendant IMPORT GLOBAL, LLC which has a regular place of business in the Southern District of Florida, which has engaged in business activities in and directed to this District, and which has committed tortious acts within this District. Further, the Defendant IMPORT GLOBAL, LLC is registered with the State of Florida to conduct business in this state and lists a principal place of business in this District.

2

7.      This Court has personal jurisdiction over Defendant ABRAHAM HABOSHA and Defendant LINDSAY MILLER, who both live in the Southern District of Florida, who have engaged in business activities in and directed to this District, and who have committed tortious acts within this District.

8.      Venue is proper under 28 U.S.C. § 1391 in that the Defendants reside in this District and a substantial part of the events or omissions giving rise to the claims occurred in this District.

## THE PARTIES

9.      Plaintiff RONIN FACTORY, LLC is a Nevada limited liability company with its principal place of business at 3030 Robert Trent Jones Ln #225, Las Vegas, NV, 89141.

10.     Upon information and belief, Defendant IMPORT GLOBAL, LLC (hereinafter "IGL") is a Florida limited liability company with its principal place of business at 5967 Brookfield Cir. W, Fort Lauderdale, FL 33312. Florida Department of State records identify ABRAHAM HABOSHA as the registered agent of IGL, having an address of 1728 Ne Miami gardens Dr 151, North Miami, Florida 33179.

11.     Upon information and belief, Defendant ABRAHAM HABOSHA lives in the Southern District of Florida.

12.     Upon information and belief, Defendant LINDSAY MILLER lives in the Southern District of Florida.

## BACKGROUND FACTS

### Plaintiff's Trademark

13.     Long before Defendants entered the market, Plaintiff began using the RONIN FACTORY trademarks, comprising V-shaped designs, in interstate commerce in association with vehicle engine parts, car antennas and the like.

14.     The U.S. Patent and Trademark Office ("USPTO") recognizes the RONIN FACTORY trademarks as being owned by Plaintiff and being associated with vehicle engine parts, car antennas, and the like (among other goods and services).

15.     Plaintiff duly and legally registered the RONIN FACTORY trademarks for vehicle engine parts, car antennas, and the like (among other goods and services) in the USPTO on the Principal Register on Jun. 29, 2021, as Registration Number 6,399,834, and on July 2, 2024, as Registration Number 7,433,699, and has used the RONIN FACTORY trademarks continuously in commerce since they were first used in 2017 and 2019, respectively. True and correct records of the registrations of the RONIN FACTORY trademarks are attached hereto as Exhibits A and B.

16.     An image of Plaintiff's trademark, as reflected in Plaintiffs U.S. Trademark Registration 6,399,834, is below.  Also shown below is one example of Plaintiff's use of the trademark on one of Plaintiff's products, a bullet-shaped car antenna.



17.     The RONIN FACTORY trademarks are fanciful and inherently distinctive. Plaintiff has trademark rights in the RONIN FACTORY trademarks in connection with vehicle engine parts, car antennas, and the like (among other goods and services).

18.     Since long prior to the acts of Defendants complained of herein, Plaintiff has, via its advertisements, marketing, online product listings, online ads and, more currently, its web site, continuously been marketing and selling vehicle engine parts, car antennas, and the like (among other goods and services) bearing the RONIN FACTORY trademarks in interstate commerce. Plaintiff has spent more than ten million dollars ($10,000,000) on online advertising, sales activities, advertising in different forums, electronic mail advertising, and Internet advertising for Plaintiff's products, and has aggressively marketed and sold Plaintiff's goods and services under the RONIN FACTORY trademarks.

19.     Since long prior to the acts of Defendants complained of herein, Plaintiff has expended much money, time, and effort in promoting Plaintiff's goods and services under the RONIN FACTORY trademarks. As a result of Plaintiff's efforts, the RONIN FACTORY trademarks have become famous and distinctive throughout the United States and in this District and are identified in the minds of the consumers and others exclusively with Plaintiff's high-quality vehicle engine parts, car antennas, and the like (among other goods and services).

20.     By virtue of long and continuous use, and since long prior to the acts of Defendants complained of herein, the RONIN FACTORY trademarks have developed a goodwill and significance exclusively related to Plaintiff, are readily recognizable by the public and the trade as designations associated exclusively with Plaintiff's vehicle engine parts, car antennas, and the like (among other goods and services).

21.     Plaintiff has the intent to expand its service and product line bearing the RONIN FACTORY trademarks and to expand its sales territories.

**Plaintiff's Trade Dress**

22.     Long before Defendants entered the market, Plaintiff established trade dress rights in (i) its product design; (ii) its packaging; and (iii) its style of doing business.

23.     With respect to Plaintiff's product design, Plaintiff has established trade dress in the shape, color, and branding of its products.  For example, as shown in the image below, one of Plaintiff's products is bullet-shaped, which is a non-functional design for a car antenna.  The antenna is colored black, and Plaintiff's chevron-style trademark appears in a contrasting color near the base of the antenna.

6



24.     In addition to the design above, Plaintiff sells a variety of antennas that have a similar look and feel.  Each of the antennas features a consistent color scheme and branding. Some examples are shown below (image taken from Plaintiff's roninfactory.com website on November 12, 2024).



**FORD TUFFLOCK™ BULLET ANTENNA**
★★★★★ 3112 reviews
~~$ 30.00~~ $ 20.00



**FORD TUFFLOCK™ SHORT ANTENNA (4 INCH)**
★★★★★ 1282 reviews
$ 32.00



**FORD TUFFLOCK™ FLEXIBLE ANTENNA (8 INCH)**
★★★★★ 1282 reviews
$ 35.00



**FORD TUFFLOCK™ FLEXIBLE ANTENNA (12 INCH)**
★★★★★ 1282 reviews
$ 35.00



**CHEVY & GMC TUFFLOCK™ BULLET ANTENNA**



**CHEVY & GMC TUFFLOCK™ SHORT FLEXIBLE ANTENNA (5 INCH)**



**CHEVY & GMC TUFFLOCK™ FLEXIBLE ANTENNA (8 INCH)**



**CHEVY & GMC TUFFLOCK™ FLEXIBLE ANTENNA (12 INCH)**

25.     Plaintiff's trade dress in its products is inherently distinctive.  When taken as a whole, Plaintiff's product design serves to identify in the mind of the consumer that Plaintiff is the source of the car antenna products.  For example, the consistent color scheme and branding is distinctive and nonfunctional.

26.     In addition, Plaintiff's trade dress in its product designs has acquired secondary meaning.  Plaintiff has been selling its products since 2017.  Further, Plaintiff has expended a significant amount of money (over $10,000,000) advertising and marketing its products. Based on Plaintiff's unique product designs and substantial sales, advertising, and marketing, consumers identify the Plaintiff as the source of the car antenna products.

27.     Plaintiff also has trade dress rights in its product packaging.  For example, as shown below, Plaintiff packages its bullet-shaped antennas in tubular packaging that is colored black.  The packaging includes white, schematic-style graphics in the background, with the

words "bullet antenna" appearing in a white banner running along the longitudinal axis of the tube.



28.     Plaintiff's trade dress in its product packaging is inherently distinctive.  When taken as a whole, Plaintiff's product design serves to identify in the mind of the consumer that Plaintiff is the source of the car antenna products.  The tubular shape, color scheme, and styling are nonfunctional and distinctive.

29.     In addition, Plaintiff's trade dress in its product packaging has acquired secondary meaning.  Plaintiff has been using this product packaging since at least as early as 2019.  Further, Plaintiff has expended a significant amount of money (over $10,000,000) advertising and marketing its products. Based on Plaintiff's unique product packaging and substantial sales,

advertising, and marketing, consumers identify the Plaintiff as the source of the car antenna products.

30.     Plaintiff has also established trade dress in its style of doing business, which generally encompasses Plaintiff's product design, product packaging, product instructions, and Plaintiff's online marketplace presentation, configuration, and layout.

31.     For example, Plaintiff consistently presents its product listing as reflected in the image below (for which Plaintiff has a U.S. copyright registration, as described below).  The listing generally shows an up-close view of the product (at left) and an image of the product installed on a vehicle (at right).



32.     Below is an image from Plaintiff's website (roninfactory.com) showing Plaintiff's product presentation theme.



33.     In addition to selling its products on its own website (roninfactory.com), Plaintiff also sells products on various online marketplaces, such as Amazon.com.  Below is a screenshot from one of Plaintiff's product offerings on Amazon.  Plaintiff advertises its product on Amazon in a manner consistent with its roninactory.com website, as shown below.



34.     Plaintiff's trade dress in its style of doing business is inherently distinctive.  When taken as a whole, Plaintiff's style of doing business serves to identify in the mind of the consumer that Plaintiff is the source of the car antenna products.  For example, the combination of the product design, product packaging, branding, advertising style (including the image style of showing an enlarged view of an antenna at left and the antenna installed on a vehicle at right), product instructions, is distinct and serves to identify Plaintiff as the source of the goods (in this instance, car antennas).

35.     In addition, Plaintiff's trade dress in its style of doing business has acquired secondary meaning.  Plaintiff has been implementing this style of doing business since at least as early as 2019.  Further, Plaintiff has expended a significant amount of money (over $10,000,000) advertising and marketing its products. Based on Plaintiff's unique style of doing business and its substantial sales, advertising, and marketing, consumers identify the Plaintiff as the source of the car antenna products.

**Plaintiff's Copyright**

36.     In 2021, Plaintiff's owner, Scott Macco, authored a two-dimensional image including Plaintiff's car antenna product bearing one of the RONIN FACTORY trademarks

along with a truck (hereafter "Plaintiff's Image"). The Plaintiff's Image is a work of original authorship developed solely by Scott Macco, which is shown below.



37.     Scott Macco registered the copyright in the Plaintiff's Image with the U.S. Copyright Office, thereby obtaining U.S. Registration No. VA-2-395-784, which is attached as Exhibit C.

38.     Subsequently, Plaintiff's owner, Scott Macco, assigned his copyright in the Plaintiff's Image to Plaintiff, which now exclusively owns all rights in the Plaintiff's Image, including the copyright therein.

**Defendants' Use of Plaintiff's Intellectual Property**

39.    Long subsequent to (i) Plaintiff's adoption and use of the RONIN FACTORY trademarks in commerce, (ii) Plaintiff's adoption and use of its trade dress in its product design, packaging, and style of doing business, and (iii) Plaintiff's use of Plaintiff's Image, Defendants (i) commenced the use of marks confusingly similar to the RONIN FACTORY trademarks; (ii) commenced selling products with a confusingly similar product design, commenced using confusingly similar product packaging, and commenced implementing a confusingly similar style of doing business; and (iii) advertised and promoted, among other things, the identical products as those offered under Plaintiff's RONIN FACTORY trademarks (i.e., car antennas, among other things) to the same class of consumer.

40.    By selling and marketing the same products, in the same marketplaces, and to many of the same classes of consumers as Plaintiff's, under the RONIN FACTORY trademarks and by using Plaintiff's trade dress, Defendants have further sought to unlawfully profit from use of marks and trade dress confusingly similar to Plaintiff's RONIN FACTORY trademarks and trade dress.

41.    As one example, Plaintiff's Amazon listing for one of its bullet antenna products is shown below, along with Defendants' Amazon listing for a comparable product.  This demonstrates (i) Defendants' confusingly similar use of Plaintiff's RONIN FACTORY trademarks; (ii) Defendants' confusingly similar use of Plaintiff's trade dress (e.g., the product design and style of doing business); and (iii) use of Plaintiff's Image (or a substantially similar image).



42.     As another example, the below images show side-by-side comparisons of Plaintiff's packaging and Defendants' packaging.  The style of Defendants' packaging is confusingly similar to Plaintiff's packaging, utilizing a similar layout, graphics, and color scheme.  Further, Defendants' packaging copies verbatim the instructions and the language of the "NOT SATISFIED?" section of the packaging.  This demonstrates infringement of Plaintiff's trade dress in its packaging and style of doing business.









43.     Upon information and belief, Defendants are well aware and, since long prior to the acts of Defendants complained of herein, have been well aware of the extensive goodwill represented and symbolized by Plaintiff's RONIN FACTORY trademarks and trade dress. Upon information and belief, Defendants are well aware that Plaintiff's RONIN FACTORY trademarks and trade dress are widely recognized and relied upon by the public and the trade as identifying Plaintiff's engine parts, car antennas and the like.

44.     Notwithstanding that knowledge, Defendants are engaging in, and will continue to engage in, a deliberate and willful scheme to trade upon and to misappropriate for themselves the extensive goodwill represented and symbolized by Plaintiff's RONIN FACTORY trademarks and trade dress. The acts of Defendants complained of herein constitute willful and intentional infringement of Plaintiff's RONIN FACTORY trademarks and trade dress in total disregard of Plaintiff's rights.

45.     Defendants' use of the RONIN FACTORY trademarks and trade dress is without the consent, license, or permission of Plaintiff.

46.     Defendants' use of marks and trade dress confusingly similar to Plaintiff's RONIN FACTORY trademarks and trade dress is designed to, calculated to, and has and is likely to cause confusion and mistake, and to deceive customers and prospective customers as to the origin or sponsorship of Defendants' products. Defendants' use of Plaintiff's RONIN FACTORY trademarks and trade dress has actually, and is likely to, cause the same class of customers and prospective customers to believe that Defendants' products are Plaintiff's, or are sponsored, licensed, authorized, or approved by Plaintiff, all to the detriment of Plaintiff, the trade, and the public.

47.     There is actual confusion in the marketplace.  Customers who have purchased Defendants' products have returned Defendants' products to Plaintiff.  Further, Plaintiff has received customer inquiries about Defendants' products.  Below is one such inquiry.



48.     Plaintiff has been forced to spend additional time and resources resolving this actual customer confusion. For example, Plaintiff is forced to provide reimbursements when customers return Defendants' products.

49.     Plaintiff has previously demanded that Defendants cease and desist from acts of infringement of Plaintiff's intellectual property and has given Defendants actual notice of said infringement, but Defendants have continued to engage in infringing conduct. By this conduct, Defendants are engaging in an ongoing intentional scheme to derive profits from Plaintiff's intellectual property.

50.     Upon information and belief, Defendants acted intentionally, knowingly, negligently or through willful blindness, to infringe on Plaintiff's trademarks, trade dress, and Image for profit and monetary gain.

51.     Defendants' infringements have harmed and continue to harm Plaintiff by illegally appropriating the benefits of Plaintiff's creative works, vis-à-vis the Plaintiff's Image. Defendants' continued infringements undermine Plaintiff's creative efforts.

52.     Upon information and belief, Defendant ABRAHAM HABOSHA is the principal of Defendant IMPORT GLOBAL, LLC and is registered with the Florida Dept. of State as the registered agent of Defendant IMPORT GLOBAL, LLC.

53.     Upon information and belief, Defendant ABRAHAM HABOSHA authorized, directed, and participated in the trademark infringement, trade dress infringement, copyright infringement, and unfair competition by, among other acts, intentionally generating and posting IMPORT GLOBAL, LLC's listings online for consumers to view in an intentional ploy to confuse consumers, so that IMPORT GLOBAL, LLC could trade upon and misappropriate the vast goodwill represented and symbolized by Plaintiff's intellectual property.

54.     Upon information and belief, Defendant LINDSAY MILLER is an owner, and the vice president of sales and marketing of Defendant IMPORT GLOBAL, LLC.

55.     Upon information and belief, Defendant LINDSAY MILLER authorized, directed, and participated in the trademark infringement, trade dress infringement, copyright infringement, and unfair competition by, among other acts, intentionally generating and posting IMPORT GLOBAL, LLC's listings online for consumers to view in an intentional ploy to confuse consumers, so that IMPORT GLOBAL, LLC could trade upon and misappropriate, the vast goodwill represented and symbolized by Plaintiff's intellectual property.

**COUNT I**
**TRADEMARK INFRINGEMENT UNDER THE LANHAM ACT: 15 U.S.C. § 1114**

56.     Plaintiff incorporates herein each and every allegation set forth in the preceding paragraphs above as if fully set forth herein.

57.     Defendants' unlawful use in commerce of marks confusingly similar to the RONIN FACTORY trademarks infringes upon Plaintiff's rights in its federally registered and protected RONIN FACTORY trademarks.

58.     Defendants' unlawful use in commerce of marks confusingly similar to the RONIN FACTORY trademarks in Defendants' sales and advertising is causing, and is likely to continue causing, consumers, distributors, retailers and others to mistakenly believe that Plaintiff sponsors or approves Defendants' conduct, or that Plaintiff is affiliated with Defendants, or that Defendants have obtained permission to engage in these sales and advertising activities. By using marks confusingly similar to the RONIN FACTORY trademarks, Defendants further create confusion as to the source of the goods that Defendants sell, and/or whether Plaintiff has endorsed Defendants or the goods that Defendants sell.

59.     Defendants' use of marks confusingly similar to the RONIN FACTORY trademarks in their sales, marketing and advertising activities is dilutive of the RONIN FACTORY trademarks.

60.     Defendants are engaging in the above conduct at least negligently.

61.     Defendants' acts of trademark infringement have resulted in Defendants having made substantial profits to which Defendants are not entitled.

62.     As a direct and proximate result of Defendants' conduct, Plaintiff is suffering irreparable harm and is incurring damages in an amount to be determined, and unless restrained by this Court, Plaintiff has no adequate remedy at law.

63.     In the alternative, Defendants are willfully and deliberately violating Plaintiff's rights in the RONIN FACTORY trademarks by using confusingly similar marks with the purpose and intent of causing confusion, such that Plaintiff is entitled to the remedies set forth in 15 U.S.C. §1117, in addition to injunctive relief. Defendants' willful and deliberate acts involve such circumstances making this an exceptional case, such that treble damages and reasonable attorneys' fees and costs should be assessed against Defendants pursuant to 15 U.S.C. §1117.

## <u>COUNT II</u>
## <u>TRADE DRESS INFRINGEMENT UNDER THE LANHAM ACT: 15 U.S.C. § 1125</u>

64.     Plaintiff incorporates herein each and every allegation set forth in the preceding paragraphs above as if fully set forth herein.

65.     Defendants' unlawful use in commerce of trade dress that is confusingly similar to Plaintiff's trade dress infringes upon Plaintiff's rights in its trade dress.

66.     Defendants' unlawful use in commerce of trade dress that is confusingly similar to Plaintiff's trade dress in Defendants' sales and advertising is causing, and is likely to continue causing, consumers, distributors, retailers and others to mistakenly believe that Plaintiff sponsors or approves Defendants' conduct, or that Plaintiff is affiliated with Defendants, or that Defendants have obtained permission to engage in these sales and advertising activities. By using

trade dress confusingly similar to Plaintiff's trade dress, Defendants further create confusion as to the source of the goods that Defendants sell, and/or whether Plaintiff endorses Defendants or the goods that Defendants sell.

67.     Defendants' use of trade dress confusingly similar to Plaintiff's trade dress in their sales, marketing and advertising activities is dilutive of Plaintiff's trade dress.

68.     Defendants are engaging in the above conduct at least negligently.

69.     Defendants' acts of trade dress infringement have resulted in Defendants having made substantial profits to which Defendants are not in equity or good conscience entitled.

70.     As a direct and proximate result of Defendants' conduct, Plaintiff is suffering irreparable harm and is incurring damages in an amount to be determined, and unless restrained by this Court, Plaintiff has no adequate remedy at law.

71.     In the alternative, Defendants are willfully and deliberately infringing Plaintiff's rights in its trade dress by using confusingly similar trade dress with the purpose and intent of causing confusion, such that Plaintiff is entitled to the remedies set forth in 15 U.S.C. §1117, in addition to injunctive relief. Defendants' willful and deliberate acts involve such circumstances making this an exceptional case, such that treble damages and reasonable attorneys' fees and costs should be assessed against Defendants pursuant to 15 U.S.C. §1117.

## COUNT III
## FALSE ADVERTISING/UNFAIR COMPETITION
## UNDER THE LANHAM ACT: 15 U.S.C. § 1125

72.     Plaintiff incorporates herein each and every allegation set forth in the preceding paragraphs above as if fully set forth herein.

73.     Defendants' use of marks confusingly similar to the RONIN FACTORY trademarks in the course of selling and marketing goods is a use in interstate commerce of words

and/or symbols that convey a false designation of origin, and/or a false description or representation regarding these goods to the consuming public.

74.     Defendants' use of product listings and product packaging configured to mislead and deceive consumers into thinking they are those of Plaintiff's in the course of selling and marketing goods is a use in interstate commerce of words and/or symbols that convey a false designation of origin, and/or a false description or representation regarding these goods to the consuming public.

75.     Defendants are engaging in the above conduct negligently. In the alternative, Defendants have engaged in the above activities willfully, or with reckless disregard for whether Defendants' activities would cause injury to Plaintiff.

76.     Such use has misled and deceived, and will continue to mislead and deceive, the public into believing that Defendants' goods originate from Plaintiff, are provided by Plaintiff, are licensed by Plaintiff, or are in some way sanctioned or authorized by, or otherwise affiliated with, Plaintiff.

77.     Defendants' unauthorized association of its goods - through its use in interstate commerce of marks confusingly similar to the RONIN FACTORY trademarks and product listings, as well as product packaging, configured to mislead and deceive consumers into thinking they are those of Plaintiff's, in promotion, marketing, advertising, distribution and sales – has resulted in revenue to Defendants and has thereby deprived Plaintiff of revenue to which it is entitled.

78.     Defendants have used and continue to use marks confusingly similar to the RONIN FACTORY trademarks, as well as product listings and product packaging, configured to mislead and deceive consumers into thinking they are those of Plaintiff in connection with their

promotion, marketing, advertising distribution and sales in commerce of their goods, with actual or constructive knowledge of Plaintiff's long and extensive prior use of the RONIN FACTORY trademarks and of Plaintiff's product listings and product packaging.

79.     Furthermore, Defendants have promoted, advertised, marketed, distributed and sold, in interstate commerce, their competing goods by using marks confusingly similar to the RONIN FACTORY trademarks, and by using product listings, and product packaging, configured to mislead and deceive consumers into thinking they are those of Plaintiff, in such a manner so as to falsely designate origin or association with Plaintiff's famous name and the RONIN FACTORY trademarks, so as to inevitably cause confusion or mistake among purchasers and potential purchasers as to the true origin, source, sponsorship, or affiliation of Defendants' goods, all to Defendants' unearned benefit, and to Plaintiff's injury.

80.     By so infringing on the RONIN FACTORY trademarks in interstate commerce, and by using product listings and product packaging configured to mislead and deceive consumers into thinking they are those of Plaintiff, Defendants violated Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

81.     As a direct and proximate result of Defendants' conduct, Plaintiff has incurred damages in an amount to be determined, and is entitled to the remedies provided for in 15 U.S.C. §§1117, *et seq*.

### <u>COUNT IV</u>

### <u>TRADEMARK INFRINGEMENT UNDER FLORIDA COMMON LAW</u>

82.     Plaintiff incorporates herein each and every allegation set forth in the preceding paragraphs above as if fully set forth herein.

83.     Long before Defendants' activities complained of herein, the Plaintiff acquired trademark rights in the RONIN FACTORY trademarks under Florida common law.

84.     The RONIN FACTORY trademarks are inherently distinctive and/or have acquired secondary meaning.

85.     Defendants are unlawfully and without Plaintiff's consent using marks confusingly similar to the RONIN FACTORY trademarks in commerce in the State of Florida in connection with goods, to the benefit of Defendants and to the detriment of Plaintiff.

86.     Defendants' aforesaid acts constitute infringement, misappropriation, and misuse of Plaintiff's RONIN FACTORY trademarks in violation of Plaintiff's rights under the common law of the State of Florida.

87.     Defendants' unlawful use in commerce of the RONIN FACTORY trademarks in Defendants' sales and advertising is causing, and is likely to continue causing, consumers, distributors, retailers and others to mistakenly believe that Plaintiff sponsors or approves Defendants' conduct, or that Plaintiff is affiliated with Defendants, or that Defendants have obtained permission to engage in the sales and advertising activities. By using marks confusingly similar to the RONIN FACTORY trademarks, Defendants further create confusion as to the source of the goods that Defendants sell, and/or whether Plaintiff has endorsed Defendants or the goods that Defendants sell.

88.     Defendants' aforesaid acts have caused and/or will cause great and irreparable injury to Plaintiff, and unless said acts are restrained by this Court, they will continue to harm Plaintiff. Plaintiff has no adequate remedy at law.

89.     Defendants are willfully and deliberately infringing Plaintiff's trademark rights in the RONIN FACTORY trademarks under Florida common law. Defendants' willful and deliberate acts involve such circumstances making this case exceptional, such that punitive

damages and reasonable attorney's fees and costs should be assessed against the Defendants pursuant to Florida common law.

### COUNT V
### VIOLATION OF THE FLORIDA DECEPTIVE AND
### UNFAIR TRADE PRACTICES ACT, Fla. Stat. 501.201 *et seq.*

90.     Plaintiff incorporates herein each and every allegation set forth in in the preceding paragraphs above as if fully set forth herein.

91.     Defendants are incorporating and using marks confusingly similar to the RONIN FACTORY trademarks to conduct trade and commerce, wherein Plaintiff's registered RONIN FACTORY trademarks were adopted and utilized prior in time by Plaintiff.

92.     Defendants are using product listings and product packaging configured to mislead and deceive consumers into thinking they are those of Plaintiff to conduct trade and commerce, wherein Plaintiff's product listings and product packaging were adopted and utilized prior in time by Plaintiff.

93.     Through the unauthorized use of marks confusingly similar to the RONIN FACTORY trademarks, and through the use of product listings and product packaging configured to mislead and deceive consumers into thinking they are those of Plaintiff, Defendants have, upon information and belief, effectively palmed off or passed off the goods they sell as Plaintiff's goods to the same class of consumers.

94.     Upon information and belief, Defendants' conduct in doing so was negligent. In the alternative, Defendants intentionally adopted marks confusingly similar to the RONIN FACTORY trademarks and intentionally used and are using product listings and product packaging configured to mislead and deceive consumers into thinking they are those of

Plaintiff's in order to capitalize on the reputation and goodwill Plaintiff has established over time throughout the United States and within the State of Florida.

95.     Defendants' use of marks confusingly similar to the RONIN FACTORY trademarks and use of product listings and product packaging configured to mislead and deceive consumers into thinking they are those of Plaintiff to sell, market and advertise, has in the past, and will in the future, confuse the same class of consumers as to the true source of Defendants' goods, and create a false impression of a relationship between Defendants and Plaintiff.

96.     Defendants' acts are harming Plaintiff's reputation, are severely damaging Plaintiff's goodwill, and upon information and belief, have diverted and are diverting sales from Plaintiff.

97.     Defendants' actions are in violation of §501.204 Florida Statute, i.e., the Florida Deceptive and Unfair Trade Practices Act.

98.     Defendants' aforesaid acts have caused and will continue to cause great and irreparable injury and damage to Plaintiff, and unless said acts are restrained by this Court, they will continue to harm Plaintiff. Plaintiff has no adequate remedy at law.

99.     Plaintiff is entitled to recover its actual damages for violation of this statute pursuant Fla. Stat. 501.211(2).

100.    Plaintiff is entitled to recover its reasonable attorneys' fees from Defendants pursuant to §501.2105 Florida Statute.

<u>**COUNT VI**</u>
<u>**COPYRIGHT INFRINGEMENT: 17 U.S.C. §501**</u>

101.    Plaintiff incorporates herein each and every allegation set forth in in the preceding paragraphs above as if fully set forth herein.

102.    Plaintiff exclusively owns the copyright in Plaintiff's Image" as shown below:

27



103.    Plaintiff has registered its copyright in Plaintiff's Image with the U.S. Copyright

Office, thereby obtaining U.S. Registration No. VA-2-395-784 on May 25, 2024.

104.    At all pertinent times, Plaintiff was the exclusive owner of Plaintiff's Image and

the copyright therein, which is being illegally and improperly reproduced and/or displayed by

Defendants.

105.    Defendants had and continue to have access to Plaintiff's Image.

106.    Defendants are reproducing and/or displaying Plaintiff's Image by using

Plaintiff's Image in their online advertising and on their packaging.

107.    Defendants are infringing Plaintiff's copyright by reproducing and/or displaying

Plaintiff's Image without approval or authorization from Plaintiff.

108.     Defendants knew or should have reasonably known they did not have permission to copy or use Plaintiff's Image and further knew or should have known their acts constituted copyright infringement.

109.     Defendants' conduct is willful within the meaning of 17 U.S.C. §101, *et seq*. At a minimum, Defendants are acting with willful blindness and reckless disregard of Plaintiff's registered copyright.

110.     Because of their wrongful conduct, Defendants are liable to Plaintiff for copyright infringement under 17 U.S.C. §501. Plaintiff suffers and will continue to suffer substantial losses, including, but not limited to, lost income and profits, as a result of Defendants' actions.

111.     The law permits Plaintiff to recover damages, including readily ascertainable direct losses and all profits Defendants made by its wrongful conduct. 17 U.S.C. §504. Alternatively, the law permits Plaintiff to recover statutory damages. 17 U.S.C. §504(c).

112.     Because of Defendants' willful infringement, the law permits enhancement of the allowable statutory damages. 17 U.S.C. §504(c)(2) up to $150,000.

113.     The law permits Plaintiff to be awarded injunctive relief. 17 U.S.C. §502. Further, the law permits a Court to order the impounding of any and all infringing materials. 17 U.S.C. §503.

114.     Plaintiff is entitled to preliminary and permanent injunctive relief prohibiting further infringement of Plaintiff's copyright. 17 U.S.C. §502.

115.     Plaintiff is entitled to actual or statutory damages and an order impounding any and all infringing materials, to be elected by the Plaintiff.


**PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs prays for:

A.      Judgment that Defendants are willfully infringing Plaintiff's RONIN FACTORY trademarks, Plaintiff's trade dress, and that Defendants are competing unfairly with Plaintiff in violation of Plaintiff's rights under the Lanham Act, 15 U.S.C. §§ 1114 and 1125, Florida common law, and Florida's Deceptive and Unfair Trade Practices Act, Fla. Stat. 501.201 *et seq.*;

B.      Judgment that Defendants are willfully infringing Plaintiff's rights in federally registered copyrights pursuant to 17 U.S.C. §501 through direct or contributory acts;

C.      An injunction, pursuant to 15 U.S.C. §1116, prohibiting Defendants and all officers, directors, agents, servants, employees, attorneys, successors, and assigns, and all persons in active concert or participation therewith, from:

1)      using Plaintiff's RONIN FACTORY trademarks, and any formative variations or phonetic equivalents thereof, or any term, name or mark which incorporates any of the foregoing, or any trademarks confusingly similar thereto, on or in connection with the sale of any unauthorized goods or the rendering of any unauthorized services;

2)      using any logo, trade name, or trademark which falsely represents, or which has the effect of falsely representing that the services or products of Defendants, or of any third parties, are sponsored by, authorized by, or are in any way associated with Plaintiff;

3)      infringing Plaintiff's RONIN FACTORY trademarks;

4)      falsely representing themselves as being connected with Plaintiff, or sponsored by or associated with Plaintiff, or engaging in any act which is likely to falsely cause

the trade, retailers, and/or members of the purchasing public to believe that Defendants are associated with Plaintiff; and

5) affixing, applying, annexing, or using in connection with the sale of any goods or services offered or sold by Defendants including, without limitation, vehicle engine parts and car antennas, a false description or representation including designs tending to falsely describe or represent such goods or services as being those of Plaintiff and from offering such goods or services in commerce.

D. An injunction requiring Defendants and all officers, directors, agents, servants, employees, attorneys, successors, and assigns, and all persons in active concert or participation therewith, to:

1) recall all online listings, goods, packaging, online ads, printed advertisements, signs and other written or printed material in the possession or control of Defendants which bear the RONIN FACTORY trademarks or any variation thereof, including but not limited to the V-like shape currently placed on Defendants' products and any formative variations thereof, or any term, name or mark which incorporates any of the foregoing, or any trademarks confusingly similar thereto, alone or in combination with any other word or element, and all plates, molds, matrices, and other means for making the aforesaid items; and

2) file a written report with this Court that details, under oath, the manner of compliance with paragraph D(1) and to serve the same upon Plaintiff within thirty (30) days after service of the injunction issued in this action.

E.     An order of impoundment pursuant to 17 U.S.C. §503 impounding all infringing products and advertising and packaging materials bearing Plaintiff's Image, and any substantially similar variations thereof, which are in Defendants' possession or under its control;

F.     An injunction against Defendants, their agents, representatives, servants, employees, attorneys, successors and assigns, to enjoin and restrain Defendants from reproducing, performing or displaying Plaintiff's Image or any image substantially similar thereto, or making any other infringing use or infringing distribution of Plaintiff's works;

G.     An order requiring a full and complete accounting of all amounts due and owing to Plaintiff as a result of Defendants' illegal or improper activity, whether criminal or civil in nature;

H.     An award of damages of Plaintiff arising from Defendants' acts of trademark infringement and unfair competition, as well as Defendants' profits, pursuant to 15 U.S.C. §1117;

I.     An award of actual damages for Plaintiff, to be determined at trial, pursuant to 15 U.S.C. §1117 and §501.211, Florida Statutes, and trebled upon a determination that Defendants' infringement has been and is willful, pursuant to 15 U.S.C. §1117, together with prejudgment interest and costs;

J.     An order directing the Defendants pay Plaintiff damages as follows:

a)     maximum enhanced statutory damages of $150,000 per infringed work pursuant to 17 U.S.C. §504(c)(2), for Defendants' willful infringement of Plaintiff's Image; or

b)     Plaintiff's actual damages and Defendants' profits from Defendants' infringement of Plaintiff's Image;

K.     An award of attorney fees for Plaintiff pursuant to 15 U.S.C. §1117 and §501.2105, Florida Statutes, as well as 17 U.S.C. §505.

L.      An award of Plaintiff's taxable costs, pre- and post-judgment interest, punitive damages, and such other and further relief as the Court may deem just and proper.

M.      A grant to Plaintiff of whatever and further relief, either in law or in equity, to which this honorable Court deems them fit to receive

### Jury Demand

Plaintiff Ronin Factory LLC hereby demands a jury trial of all issues of fact not admitted by Defendants.

Respectfully Submitted,

DATE: December 2, 2024             _s/ Ava K. Doppelt_____
                                   Ava K. Doppelt – Lead Counsel
                                   Florida Bar No. 393738
                                   255 South Orange Avenue, Suite 1401
                                   Orlando, FL 32801
                                   407-841-2343
                                   adoppelt@allendyer.com

                                   Michael T. Griggs (pro hac vice pending)
                                   Geoffrey J. Behr (pro hac vice pending)
                                   BOYLE FREDRICKSON, S.C.
                                   840 N. Plankinton Ave.
                                   Milwaukee, WI 53203
                                   mtg@boylefred.com
                                   gjb@boylefred.com

                                   *Attorneys for Plaintiff*