**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF FLORIDA**

**MIAMI DIVISION**

**CASE NO.: 1:24-cv-24700-GAYLES/SHAW-WILDER**

RONIN FACTORY, LLC,

      Plaintiff,

v.

IMPORT GLOBAL, LLC,
ABRAHAM HABOSHA, and
LINDSAY MILLER,

      Defendants.

_____/

IMPORT GLOBAL, LLC,

      Counterclaimant,

v.

RONIN FACTORY, LLC,

      Counter defendant.

_____/

**RONIN FACTORY, LLC'S MOTION FOR PARTIAL SUMMARY JUDGMENT**

**Table of Contents**

I.    Introduction ................................................................................................................. 1

II.    Background .................................................................................................................. 2

A.    Ronin's intellectual property ................................................................................. 2

B.    Defendants' infringing use .................................................................................... 4

C.    Online takedown requests. ................................................................................... 7

III.    Legal Standard ............................................................................................................ 7

IV.    Argument ..................................................................................................................... 8

A.    Defendants' use of the Accused Mark infringes Ronin's federally registered
trademarks under the Lanham Act ....................................................................... 8

B.    Defendants' copyright infringement of Ronin's Image ...................................... 13

C.    Defendants' sale of its Jeep EASYLOCK™ adapters infringes Ronin's '543 design
patent. ................................................................................................................... 14

D.    Defendants' sale of its EASYLOCK™ adapters infringes Ronin's '563 utility patent.
........................................................................................................................... 15

E.    Import Global's counterclaims relating to Ronin's takedown requests should be
dismissed ............................................................................................................. 17

1.    Ronin's Takedown Requests were justified. ..................................................... 18

2.    Import Global's DMCA counterclaims are limited to copyright related takedown
requests. ............................................................................................................. 19

3.    Import Global failed to provide any evidence of damages resulting from
takedown requests outside of Amazon. ............................................................. 20

V.    Conclusion ................................................................................................................ 20

Plaintiff Ronin Factory, LLC ("Ronin") hereby files a motion for partial summary judgment relating to Ronin's trademark infringement (Count I), copyright infringement (Count VI), design patent infringement (Count VII), and utility patent infringement (Count VIII) claims against Defendants Import Global, LLC ("Import Global"), Mr. Abraham Habosha, and Ms. Lindsay Miller.[1] Ronin additionally seeks summary judgment as to Import Global's counterclaims for misrepresentation under DMCA (Count I), unfair competition under the Lanham Act (Count II), tortious interference (Count III), and violation of the Florida Deceptive and Unfair Trade Practices Act (Count IV). Ronin additionally submits its Statement of Facts ("SOF") to support its motion.

## I.      Introduction

Ronin built a successful business selling aftermarket car antennas, among other products, through various online marketplaces, such as Amazon.com. In the process of building its business, Ronin established and continues to maintain a variety of intellectual property rights, including federally registered trademarks, federally registered copyrights, common law copyrights, federally issued design and utility patents, and common law trade dress rights.

In a blatant attempt to piggyback off Ronin's success and good will, Defendants engaged in a deliberate copying campaign, copying every portion of Ronin's business. Ronin filed this present case alleging that Import Global has infringed several pieces of Ronin's intellectual property and generally for unfair competition. Ronin also brought these claims against Mr. Habosha (the sole and managing member of Import Global) and Ms. Miller (the creative director of Import Global) personally.

---

[1] Ronin has also brought claims for trade dress infringement and unfair competition against the Defendants. However, due to the factual nature of these claims and the spatial limitations of this motion, Ronin has elected not to move for summary judgment on these causes of action.

Defendants' deliberate copying is no accident but rather is Defendants' admitted business model. In Import Global's corporate deposition, Mr. Habosha admitted that Import Global surveys the market for products, and then copies them:

> Q: So for example, for your center console product, what's the initial step in designing the product itself once you recognize there is opportunity in the market to sell a similar product?
> A: So we don't try to reinvent the wheel. We see demand for specific products, and we essentially look at the market. We see who's selling it, and we'll buy samples, evaluate it, and we simply find the supplier and start making it.
> Q: Do you make any changes to the product?
> A: Depending on the product.
> …
> Q: Okay. So is it fair to say you try to replicate what's already out in the industry?
> A: Yeah. I mean, I wouldn't say, necessarily, "replicate." You know, it really depends on the product, but yeah.

SOF, ¶ 1.

Based on Defendants' admitted business strategy of copying products, it is no surprise that Defendants implemented this strategy to copy Ronin's trademarks, copyrighted images, and patented products.

## II.  Background

### A.  Ronin's intellectual property.

Around 2017, Ronin began its successful venture selling a variety of aftermarket antennas, sold primarily through Amazon.com and other online marketplaces. SOF, ¶ 2. Each Ronin antenna is black and bears Ronin's stylistic trademark, which is the subject of U.S. Trademark Reg. No. 6,399,834, in white near the bottom of the antenna.[2] SOF, ¶ 3; see also ECF 55-1. One of Ronin's best-selling products is an antenna shaped like a 50-caliber bullet, generally referred to as a bullet antenna. SOF, ¶ 4. An image of one of Ronin's registered

---

[2] Ronin also owns U.S. Reg. No. 7,433,699, which is another version of Ronin's stylized trademark that has been asserted in this case. SOF, ¶ 3; see also ECF 55-2.

trademarks and Ronin's bullet antenna is shown below. ECF 55-1; SOF, ¶ 4.



U.S. Reg. No. 6,399,834

Ronin's bullet antenna

Ronin also owns a federal copyright registration (Reg. No. VA 2-395-784) of an image of one of Ronin's bullet antennas shown next to a white Ford truck ("Ronin's Image"), as shown below. SOF, ¶ 5. Ronin's Image was created from an original photograph of a Ford truck taken by Scott Macco, Ronin's sole managing member. SOF, ¶ 6. Ronin uses its copyrighted image for many of its product listings. SOF, ¶ 7.



Ronin's Image

Additionally, around 2023, Mr. Macco invented and developed multiple antenna adapters used to connect an antenna to a car mount, which are sold under Ronin's SMARTLOCK™ brand. SOF, ¶ 8. Ronin sells different types of SMARTLOCK™ adapters suited for different

vehicles, some of which are shown below. SOF, ¶ 9.



Ronin owns several utility and design patents covering its SMARTLOCK™ products, including U.S. D1,058,543 ("the '543 design patent") and U.S. 12,237,563 ("the '563 utility patent"), both of which are asserted in this case. SOF, ¶ 10; ECF 55-4; ECF 55-5.

**B.      Defendants' infringing use.**

Around November 2022, around five years after Ronin established itself in the market, Import Global began selling aftermarket car antennas, including a bullet antenna. SOF, ¶ 11. Like Ronin, Import Global sells the majority of its antennas through Amazon.com and other online channels. SOF, ¶ 12.

Both Mr. Habosha and Ms. Miller are wholly intertwined to Ronin's claims. Mr. Habosha is the sole and managing member of Import Global, and has final decision-making authority on all Import Global actions. SOF, ¶ 13. Ms. Miller is the creative director for Import Global and is married to Mr. Habosha. SOF, ¶ 14.

As part of their deliberate copying campaign, around 2022, Defendants adopted a confusingly similar mark (the "Accused Mark") to be used with their car antennas. SOF, ¶ 15. In depositions, both Mr. Habosha and Ms. Miller stated under oath that Ms. Miller independently created the Accused Mark. SOF, ¶ 16. However, Ronin later discovered that the Accused Mark is

4

nothing more than a stock image that has been available through Adobe Stock or iStock since at least 2019. SOF, ¶ 17. Thus, Defendants' extensive testimony about independently creating the Accused Mark is false, as they simply searched for a mark similar to Ronin's mark and applied it to their products.

Just like Ronin's antennas, Defendants' "Matte Black" bullet antenna, which Ms. Miller referred to as Import Global's "flagship product," includes the Accused Mark in white near the bottom of the antenna, as shown below. SOF, ¶ 18.



Ronin's bullet antenna

Defendants' bullet antenna

While not every Import Global antenna includes the Accused Mark on the product itself, most of Import Global's product packages include an image of the Matte Black bullet antenna. SOF, ¶ 19. Additionally, Defendants use the Accused Mark "across the board for branding, for packaging, for images, for [Defendants'] enhanced-brand content." SOF, ¶ 20.

Another instance of Defendants' deliberate copying is seen through Defendants' copying of Ronin's Image, which is subject to Ronin's federal copyright registration. As shown below, Defendants' Ford truck product listing uses a confusingly similar image. SOF, 21.



Further, after Ronin introduced its SMARTLOCK™ products to the market, Defendants introduced identical antenna adapter products (the "Version 1" adapter) under Defendants' EASYLOCK™ brand. SOF, ¶ 22. Like Ronin, Defendants sold different types of EASYLOCK™ adapters, one for Jeep, one for Chevy, and one for Dodge/Ram. SOF, ¶ 23. Defendants' Version 1 adapters were so close to identical copies of Ronin's SMARTLOCK™ adapters that the parts were interchangeable. SOF, ¶ 24.

Defendants transitioned to a modified version of the adapters (the "Version 2" adapters) after Ronin made Defendants aware that they were infringing Ronin's patents. SOF, ¶ 26. The Version 2 adapters are identical to the Version 1 adapters, except the Version 2 adapters changed the location of the hole that receives an Allen wrench from the side of the adapter to the end of the adapter. SOF, ¶ 27. A representative image from Ronin's '543 design patent and images of Defendants Version 1 and Version 2 Jeep adapters are below. ECF 55-5; see SOF ¶¶ 25-26.



'543 design patent

Version 1 Jeep Adapter

Version 2 Jeep Adapter

FIG. 1

### C. Online takedown requests.

In an attempt to stop Defendants' blatant infringement, Ronin filed multiple online takedown requests through Amazon and the other online marketplaces. SOF, ¶ 28. Most online marketplaces offer intellectual property owners a procedure to request that infringing product listings be removed from the marketplace. SOF, ¶ 29. After receiving advice from counsel, Plaintiff filed takedown requests generally alleging Defendants' product listings were infringing (i) Ronin's trademark rights, as alleged in this case, (ii) Ronin's copyright rights based on Ronin's federal registration, as alleged in this case, or (iii) Ronin's other intellectual property rights based on Defendants' near verbatim copying of Ronin's product packaging and product description page. SOF, ¶ 30. In other words, Ronin attempted to use the internal procedures offered by Amazon and other marketplaces to help stop Defendants' copying.

## III. Legal Standard

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Summary judgment is regarded as an integral part of the Federal Rules, which are designed to secure the just, speedy and inexpensive determination of every action. *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986) [quotations omitted].

IV.     **Argument**

A.     **Defendants' use of the Accused Mark infringes Ronin's federally registered trademarks under the Lanham Act.**

"Natural persons, as well as corporations, may be liable for trademark infringement." *Chanel, Inc. v. Italian Activewear of Fla., Inc.*, 931 F.2d 1472, 1477 (11th Cir. 1991). "If an individual actively and knowingly caused the infringement, he is personally liable." *Id*. "[A] corporate officer who directs, controls, ratifies, participates in, or is the moving force behind the infringing activity, is personally liable for such infringement without regard to piercing of the corporate veil. *Luxottica Grp. S.p.A. v. BK Deals, LLC*, 710 F. Supp. 3d 1185, 1187 (S.D. Fla. 2024).

"In order to succeed on the merits of a trademark infringement claim, a plaintiff must show that the defendant used the mark in commerce without its consent and that the unauthorized use was likely to deceive, cause confusion, or result in mistake." *Davidoff & CIE, S.A. v. PLD Int'l Corp.*, 263 F.3d 1297, 1300-1301 (11th Cir. 2001) [quotations omitted]. Here, Defendants do not dispute that Ronin owns valid, federally registered trademarks or that Defendants have used the Accused Mark without Ronin's consent. Thus, the only dispute relates to the third element, the likelihood of confusion.

"Although likelihood of confusion is generally a question of fact, the issue may be resolved on summary judgment where the undisputed record evidence would lead a reasonable juror to only one conclusion." *Edge Sys. LLC v. Aguila*, 186 F. Supp. 3d 1330, 1349 (S.D. Fla. 2016), aff'd, 708 F. App'x 998 (Fed. Cir. 2017). In evaluating whether there is a likelihood of confusion, the 11th Circuit evaluates the following seven factors: "(1) strength of the mark alleged to have been infringed; (2) similarity of the infringed and infringing marks; (3) similarity between the goods and services offered under the two marks; (4) similarity of the actual sales

8

methods used by the holders of the marks, such as their sales outlets and customer base; (5) similarity of advertising methods; (6) intent of the alleged infringer to misappropriate the proprietor's good will; and (7) the existence and extent of actual confusion in the consuming public." *Tana v. Dantanna's*, 611 F.3d 767, 774-775 (11th Cir. 2010). Of all the factors, actual confusion is "the most weighty consideration." *Aguila*, 186 F. Supp. 3d at 1349 (quoting *Caliber Auto. Liquidators, Inc. v. Premier Chrysler, Jeep, Dodge, LLC*, 605 F.3d 931, 936 (11th Cir.2010). All the factors – including the extensive evidence of *actual confusion* – compel a finding that there is a likelihood of confusion. Importantly, when ruling on Ronin's motion for a preliminary injunction, the Court applied these factors.

First, the strength of Ronin's trademarks favors a finding of likelihood of confusion because Ronin's trademarks are arbitrary or fanciful. In ruling on the preliminary injunction motion, the Court held that "Ronin believes that its mark is fanciful and arbitrary… the Court agrees." ECF 51, pg. 8. The 11th Circuit recognizes that an arbitrary or fanciful mark, that is, a mark that bears no relationship to the product, is the strongest category of trademarks. *Savannah Coll. of Art & Design, Inc. v. Sportswear, Inc.*, 983 F.3d 1273, 1282 (11th Cir. 2020). Here, Ronin's trademarks are stylized design logos that bear no relationship to Ronin's products and are therefore considered strong trademarks. Additionally, Ronin has spent over $15 million strengthening the Ronin brand via product advertisements and giveaways. SOF, ¶ 31. Moreover, Ronin has donated more than $3 million to charities, such as the Wounded Warrior Project and Make-a-Wish Foundation, bolstering Ronin's good will with consumers. SOF, ¶ 32.

Second, Defendants' Accused Mark is confusingly similar to Ronin's trademarks and is used in an identical manner, favoring a finding of a likelihood of confusion. 661 F. Supp. 3d 1145, 1162 (N.D. Fla. 2023) ("The marks need not be identical, however. Instead, courts apply

9

the 'subjective eyeball test,' by considering the overall impressions that the marks create, including the sound, appearance, and manner in which they are used, rather than comparing isolated features.") [quotations omitted]. Here, when ruling on Ronin's motion for a preliminary injunction, this Court held that the marks are similar. ECF 51, pg. 9-10. As shown below and previously described by this Court, "both marks are used on bullet-shaped products, and both are in a somewhat reverse triangular shape…." *Id*.



Third, Defendants' products offered under the Accused Mark are not only in the same trademark class (i.e., replacement car antennas), but Defendants' products themselves are nearly identical to Ronin's products. The Court held that "[t]his factor undoubtedly weighs in Ronin's favor." ECF 51, pg. 11. Thus, this factor weighs in favor of finding a likelihood of confusion.

Fourth, both Ronin and Defendants sell their products through the same sales channels and to the same customers. For example, both Ronin and Import Global sell antenna products through online marketplaces, such as Amazon.com, Walmart.com, their own respective websites, and through a wholesaler named Turn5. SOF, ¶ 33. Amazon makes up the majority of both Ronin's and Import Global's antenna sales. SOF, ¶ 34. Moreover, both Ronin and Import Global sell antennas at a similar price range (i.e., less than $60) to truck owners. SOF, ¶ 35. The Court

10

previously held that "the trade channels and customers for both parties' products are similar, if not identical." ECF 51, pg. 11.

Fifth, Ronin and Defendants utilize nearly identical advertising methods. The primary method of advertising utilized by both Ronin and Import Global is pay-per-click advertising through Amazon. SOF., ¶ 36. Additionally, as discussed in more detail with Ronin's copyright claim, Defendants use a near identical copy of Ronin's product listing photograph on Amazon. SOF, ¶¶ 5 and 21. Moreover, Defendants even copied Ronin's veteran support badges on Ronin's packaging. SOF, ¶ 37. The Court previously held that Ronin and Import Global "advertise almost in the exact same manner on Amazon." ECF 51, pg. 12.

Sixth, the evidence clearly suggests that Defendants intended to misappropriate Ronin's good will. Ms. Miller admitted that she performed market research during the process of creating Import Global's bullet antenna brand in which she came across Ronin. SOF, ¶ 38. Further, Defendants lied under oath about the creation of the Accused Mark. Both Mr. Habosha and Ms. Miller stated in depositions that Ms. Miller independently created the Accused Mark. SOF, ¶ 16. However, Ronin discovered that the Accused Mark was taken from a stock image that has been available since at least 2019, well before Defendants began using the Accused Mark. SOF, ¶ 17. Therefore, the evidence demonstrates that Defendants (i) were aware of Ronin and its trademarks when implementing the Accused Mark, (ii) lied about independently creating the Accused Mark, and (iii) selected a stock image that is confusingly similar to Ronin's trademarks. This is more than enough evidence to conclude Defendants intended to misappropriate Ronin's good will.

Finally, and most importantly, there is substantial evidence of actual confusion in the marketplace due to Defendants' deliberate copying campaign. *Frehling Enters., Inc. v. Int'l Select Grp., Inc.*, 192 F.3d 1330, 1340 (11th Cir. 1999) ("It is undisputed that evidence of actual

11

confusion is the best evidence of a likelihood of confusion.") Ronin consistently receives customer questions and returns relating to Defendants' products from consumers confusing Ronin for Import Global. Examples of such consumer confusion are detailed below.

- In April 2024, a consumer contacted Ronin customer support regarding a stolen bullet antenna. The consumer provided a picture of the stolen antenna, which showed Defendants' antenna displaying the Accused Mark. SOF, ¶ 39.

- In August 2024, Mr. Macco purchased what was advertised as a Ronin antenna sold through an unknown third-party. Mr. Macco received Defendants' antennas displaying the Accused Mark on the packaging. SOF, ¶ 40.

- In December 2024, a consumer contacted Ronin customer support indicating they were searching for their order number and that the antenna they purchased had faded white. The consumer provided images of the faded antenna, which was Defendants' antenna bearing the Accused Mark. SOF, ¶ 41.

- Also in December 2024, a consumer contacted Ronin customer support requesting help with a bullet antenna they received as a gift. The consumer indicated that they had been told it was a Ronin antenna. The consumer provided a picture of the antenna, which was Defendants' antenna. SOF, ¶ 42.

- In February 2025, a consumer contacted Ronin customer support requesting help installing a Ronin antenna. Despite holding a Ronin antenna bearing Ronin's trademark to compare, the consumer indicated that a used Ronin antenna adapter came previously installed on the car. However, the pictures provided by the consumer showed the used adapter was one of Defendants' products bearing the Accused Mark. SOF, ¶ 43.

- In June 2025, a consumer contacted Ronin customer support requesting a shorter adapter for

their antenna, which they believed was purchased through Ronin. However, the order information provided by the consumer referred to an Import Global sale. SOF, ¶ 44.

- On multiple occasions, Ronin has received product returns of Defendants' antennas through Amazon's product return procedure. These return occasions are ongoing with the most recent occurring in April 2026. SOF, ¶ 45.

There are many other third-party sellers of bullet antennas on the market, yet Ronin has never received any similar questions or returns from consumers regarding these third-party sellers, evidencing that the confusion is directly related to Import Global's Accused Mark – not the products themselves. SOF, ¶ 32. Repeated evidence of actual consumer confusion such as this strongly supports a finding of a likelihood of confusion.

Thus, each factor weighs in favor of finding a likelihood of confusion. Therefore, the evidence compels a finding of trademark infringement.

### B.     Defendants' copyright infringement of Ronin's Image.

To establish a *prima facie* case of copyright infringement, a plaintiff must show: (1) ownership of a valid and existing copyright and (2) that defendant copied the copyrighted material. *C.B. Fleet Co. v. Unico Holdings, Inc.*, 510 F. Supp. 2d 1078, 1081 (S.D. Fla. 2007) [citations omitted]. Here, Ronin's copyright registration certificate is *prima facie* proof of the existence of a valid copyright and its ownership by Ronin. *Id*.; ECF 55-3.

As for the second element, a side-by-side comparison of Ronin's Image and Defendants' product listing image shows Defendants have made a strikingly similar copy. *Id*. ("Simple side by side comparisons of Defendant's Product and C.B. Fleet's works show that the Defendant has made a strikingly similar, if not virtually identical copies.").

Importantly, Defendants do not dispute that they copied Ronin's Image. Instead,

Defendants have asserted defenses under the *scenes as faire* and merger doctrines. While some elements of Ronin's Image may fall into these doctrines, the entirety of Ronin's Image cannot be said to be void of any creative or protectable elements. For example, the size and proportion of the bullet and the truck, the location of the bullet antenna versus the truck, the use of a white truck, showing only half of the truck, the company name shown in the windshield, the bullet antenna installed on the truck, and much more are creative elements that are not a requisite for these types of product listings, yet have been copied. Ronin is entitled to summary judgment as to copyright infringement.

C.      **Defendants' sale of its Jeep EASYLOCK™ adapters infringes Ronin's '543 design patent.**

"Whoever invents any new, original and ornamental design for an article of manufacture may obtain a patent therefor," referred to generally as design patents. 35 U.S.C. § 171. Whoever without authority makes, uses, offers to sell, sells, or imports any patented invention infringes the patent. 35 U.S.C. § 271(a).

The test for design patent infringement is whether an ordinary observer, familiar with the prior art, would be deceived into believing the alleged design is the same as the patented design. *Egyptian Goddess, Inc. v. Swisa, Inc.*, 543 F.3d 665, 681 (Fed. Cir. 2008). Here, Defendants have not submitted any arguments that their Jeep EASYLOCK™ antenna adapters do not infringe the '543 design patent in response to Ronin's infringement contentions. SOF, ¶ 47. Rather, in response to Ronin's request for Import Global's non-infringement contentions, Import Global only submitted objections and failed to provide any substantive basis for non-infringement, waiving all non-infringement arguments. SOF, ¶ 48.[3]

---

[3] Import Global has alleged that the '543 design patent is invalid. Due to the factual nature of Defendants' validity defense and the spatial limitations in this brief, Ronin has elected not to

Defendants' failure to raise any noninfringement defenses is likely to due to the fact that both the Version 1 and Version 2 Jeep adapters are nearly identical to the claimed designs. As stated in the '543 design patent, "[t]he broken lines show portions of the vehicle antenna adapter that form no part of the claimed design." ECF 55-4, Pg. 2. When comparing the claimed portion of the design – i.e., the solid lines – the ordinary observer would be deceived into believing the Defendants' design is the same as the patented design.

**D.      Defendants' sale of their EASYLOCK™ adapters infringes Ronin's '563 utility patent.**

The claims of a patent define the invention to which the patentee is entitled the right to exclude. *Phillips v. AWH Corp.*, 415 F.3d 1303, 1312 (Fed. Cir. 2005) [quotations omitted]. The words of a claim are generally given their ordinary customary meaning, which is the meaning that the term would have to a person of ordinary skill in the art in question at the time of the invention. *Id.* at 1312-13. Here, the parties stipulated to all contested terms. See ECF 74.

After the claim terms are construed, literal infringement exists when every limitation in a claim is found in the accused product. *Cole v. Kimberly-Clark Corp.*, 102 F.3d 524, 532 (Fed. Cir. 1996). If literal infringement is not found, infringement may still be found under the Doctrine of Equivalents (DOE), in which the accused product contains each claim limitation or its equivalent. *See Warner-Jenkinson Co. v. Hilton Davis Chem. Co.*, 520 U.S. 17, 39-40 (1997). Typically, infringement under the DOE is determined by the function-way-result test, which "asks whether the accused product performs substantially the same function in substantially the same way to obtain the same result." *Smartrend Mfg. Grp., Inc. v. Opti-Luxx Inc.*, 159 F.4th 1322, 1332 (Fed. Cir. 2025).

---

move for summary judgment on the issue of validity. However, Ronin submits that Defendants have not submitted any evidence or expert opinion with regards to invalidity.

In response to Ronin's request for Import Global's noninfringement contentions, Import Global only identified the following two claim elements: "an opening extending through the vehicle antenna adapter orthogonally to the longitudinal axis" and "an Allen wrench configured to engage the opening in the vehicle antenna adapter to help screw the vehicle antenna adapter onto the vehicle antenna mount".[4] SOF, ¶ 49. Thus, only these two elements are in dispute.

Version 1 of Defendants' Jeep, Chevy, and Dodge/Ram EASYLOCK™ adapters literally infringe at least claim 1 of the '563 utility patent. Ronin designated Mr. Macco, the sole inventor on the '563 utility patent, as a Rule 26(a)(2)(C) expert to provide expert testimony that the Defendants' adapters infringe the '563 utility patent. SOF, ¶ 50, ECF 55-5. As outlined in Ronin's infringement contentions and Mr. Macco's declaration, the two claim elements in dispute are present in all three of the Version 1 Adapters. SOF, ¶ 51. Defendants' Jeep adapter is shown as a representative example below. *Id*. The adapter includes an opening extending through the vehicle adapter orthogonally to the longitudinal axis, and an Allen wrench is configured to engage the opening in the vehicle antenna adapter to help screw the vehicle antenna adapter onto the vehicle antenna mount. *Id*.



---

[4] Import Global has also raised validity defenses to the '563 utility patent. Again, due to the factual nature of the validity issue and the spatial limitations of this brief, Ronin has elected not to move for summary judgment with respect to validity. However, Ronin submits that Defendants have not submitted any evidence or expert opinion with regards to invalidity.

Version 2 of Defendants' Jeep and Dodge/Ram EASYLOCK™ adapters infringe the '563 utility patent under the doctrine of equivalents.[5] Here, the Version 2 adapters do not have an opening extending orthogonal to the longitudinal axis (i.e., on the side of the adapter). However, the Version 2 adapters include an opening extending along or parallel to the longitudinal axis (i.e., on the end of the adapter), as shown in the representative example below.



This opening at the end of the Version 2 adapters satisfies the function-way-result test. Namely, as stated in Mr. Macco's declaration and Ronin's infringement contentions, the opening serves substantially the same function (i.e., provide a hole to engage the Allen wrench), in substantially the same way (i.e., an Allen Wrench is inserted to engage the adapter), and achieves substantially the same result (i.e., the Allen wrench screws the adapter into the vehicle mount once engaged). SOF, ¶ 53. Notably, Defendants have not identified any expert witness to rebut Mr. Macco's expert opinion with respect to this matter. The only two claim elements in dispute are satisfied under the doctrine of equivalents, and Ronin is entitled to summary judgment that Version 1 and 2 infringe the '563 patent.

**E.**   **Import Global's counterclaims relating to Ronin's takedown requests should be dismissed.**

---

[5] Ronin is not currently alleging that Version 2 of Defendants' Chevy EASYLOCK™ adapters infringe the '563 utility patent.

### 1.      Ronin's Takedown Requests were justified.

Import Global's counterclaims should be dismissed because Import Global has failed to provide any evidence that Ronin submitted any misrepresentations or non-plausible claims in the takedown requests, which is required by all of Import Global's counterclaims. A DMCA misrepresentation claim under 17 U.S.C. § 512(f) requires proof that a person "knowingly materially misrepresents that material or activity is infringing." A claim for unfair competition under the Lanham Act requires proof of a false or misleading description or representation of fact in commercial advertising or promotion. 15 U.S.C. § 1125(a). A claim for tortious interference requires a showing of intentional and unjustifiable interference with a known business relationship. *Rudnick v. Sears, Roebuck & Co.*, 358 F. Supp. 2d 1201, 1205 (S.D. Fla. 2005). A claim for a violation of the Florida Deceptive and Unfair Trade Practices Act requires proof of unfair methods of competition or unconscionable, unfair, and/or deceptive acts or practices in the conduct of any trade or commerce. Fla. Stat. § 501.204. Thus, all of Import Global's counterclaims require a showing that Ronin's takedown requests included a known misrepresentation or an unjustifiable or unfair act. Here, Ronin had a justifiable basis for submitting all its takedown requests.

Generally, Ronin's takedown requests alleged one of the following three things: (1) Import Global's Accused Mark infringes Ronin's trademark rights, as detailed in this motion, (2) Import Global's product listing image infringes Ronin's Image, which is also detailed in this motion, and (3) Import Global's product detail page and/or packaging include a nearly verbatim copy of Ronin's product detailed page and packaging. SOF, ¶ 30.

Ronin has strong claims for both trademark infringement and copyright infringement based on Ronin's Image, which is subject of a federal registration. Thus, the takedown requests

18

relating to the first and second categories are justifiable and cannot be found to contain any misrepresentations or unfair acts. With respect to the third allegation category, because copyright rights vest at the time of creation, Ronin owned copyright rights in the exact wording used on its product detail page and product packaging. Additionally, Ronin has asserted claims for trade dress infringement and unfair competition in this case. Thus, Ronin had a justifiable basis to submit these takedown requests based on Import Global's near verbatim copying. Further, Import Global has not identified any takedown request requirement mandating a federal registration as a basis for a request.

Import Global has identified a few select notices from Amazon that include a second infringement type designated as "Smells Alike." See ECF 58-1, Pg. 55; ECF 58-2, Pg. 15 and 39. Mr. Macco has affirmatively stated that he never submitted any takedown requests with the phrase "Smells Alike." SOF, ¶ 54. Rather, based on the formatting of the Amazon notices, Mr. Macco believes that this "Smells Alike" phrase was auto-populated on Amazon's end because the formatting does not match other Amazon notices. SOF, ¶ 55. Importantly, these "Smells Alike" notices include other bases for removing the infringing product listing, such as infringing trademarks or copyrights. See ECF 58-1, Pg. 55; ECF 58-2, Pg. 15 and 39. Thus, Import Global has not submitted any evidence that the purported "Smells Alike" phrase caused any product listings to be removed.

Since Ronin had "plausible" bases to submit its takedown notices – most of which are the infringement issues presented in this case – Ronin is entitled to summary judgment as to Import Global's counterclaims.

### 2.    Import Global's DMCA counterclaims are limited to copyright related takedown requests.

Import Global has generally alleged misrepresentation under DMCA for all the takedown

requests. However, DMCA misrepresentation under 17 U.S.C. § 512(f) only relate to take downs under the Digital Millenium Copyright Act. Thus, all takedown requests unrelated to copyright, do not fall under this statute. For example, an Amazon takedown request based on trademark infringement is governed by Amazon's own policies – not the DMCA. Thus, Import Global's DMCA misrepresentation counterclaims should be dismissed as to all non-copyright related takedown requests.

### 3. Import Global failed to provide any evidence of damages resulting from takedown requests outside of Amazon.

Import Global's counterclaims extend beyond Amazon to other online marketplaces, such as Walmart.com and Ebay.com. See ECF 62, Pg. 20-24. However, despite repeated discovery requests seeking Import Global's sales information from these other online marketplaces, Import Global has only provided sales information related to Amazon. SOF, ¶ 56. Therefore, Import Global has failed to provide any sales information to prove it had sales before or after the takedown requests were submitted to the other online marketplaces. Thus, Import Global has failed to supply any evidence that it is entitled to any damages based on the takedown requests submitted in these other online marketplaces.

## V.   Conclusion

Ronin requests the Court grant it summary judgment with respect to Ronin's trademark infringement claims, copyright infringement claims, and patent infringement claims. Additionally, Ronin requests that the Court dismiss Import Global's counterclaims.

DATE: May 27, 2026

s/ Geoffrey Behr
Michael T. Griggs (pro hac vice)
Geoffrey J. Behr (pro hac vice)

20

BOYLE FREDRICKSON, S.C.
840 N. Plankinton Ave.
Milwaukee, WI 53203
mtg@boylefred.com
gjb@boylefred.com

Ava K. Doppelt
Florida Bar No. 393738
255 South Orange Avenue, Suite 1401
Orlando, FL 32801
407-841-2343
adoppelt@allendyer.com

***Attorneys for Plaintiff***

21

**CERTIFICATE OF SERVICE**

I hereby certify that the foregoing was served on all counsel of record via the Court's

ECF system.


Date: May 27, 2026

<div align="center" style="margin-left:50%">

s/ Geoffrey Behr
Geoffrey Behr
Attorney for Ronin Factory, LLC

</div>